# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JASON KUHN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONS DIRECT MORTGAGE, LLC,<br><br>Defendant. | Case No. _____<br><br>**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332(D) AND 1446(B)(3) (CAFA)**<br><br>Walton County Circuit Court Case No. 24CA115 |

Defendant Nations Direct Mortgage, LLC ("NDM") hereby removes Walton County Circuit Court Case No. 24CA115 to this Court. In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served on NDM are attached hereto as **Exhibit 1**. This Notice is supported by the Request for Judicial Notice and Declaration of Christina M. Morgan, filed concurrently herewith.

By filing this Notice of Removal, NDM does not waive any defenses that may be available to it or the right to compel arbitration. NDM does not concede that the allegations in the Amended Class Action Complaint stated a valid claim under any applicable law.

NDM reserves the right to supplement or amend this Notice of Removal. If any question arises to the propriety of the removal of this Action, NDM respectfully requests the opportunity to present a brief and oral argument in support of its position.

## I.  REMOVAL IS PROCEDURALLY PROPER

1.    Plaintiff Jason Kuhn, individually and on behalf of all others similarly situated, filed a Complaint against NDM on March 7, 2024 in Walton County Circuit Court Case No. 24CA115 ("State Court Action"). *See* Ex. 1; Declaration of

Christina M. Morgan in Support of Notice of Removal ["Morgan Decl."], filed concurrently herewith, ¶ 4.

2.     The Complaint was served on NDM's registered agent on March 8, 2024. *See* Ex. 1; Morgan Decl., ¶ 5.

3.     At the time of service, it was not evident that the State Court Action was removable. Morgan Decl., ¶ 6.

4.     However, there were other defects with the pleading. As such, on March 28, 2024, NDM filed a Motion to Dismiss the State Court Action. Morgan Decl., ¶ 7.

5.     Shortly thereafter, as discussed below, NDM received papers indicating that this Court has jurisdiction over the State Court Action. *See* Morgan Decl., ¶¶ 9-12, Exs. 2-4.

6.     This notice has been filed within 30 days after receipt by NDM of "other paper[s] from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). *See also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("under CAFA, class actions may be removed at *any* point during the pendency of litigation in state court, so long as removal is initiated within thirty days after the defendant is put on notice that a case which was not removable based on the face of the complaint has become removable").

7.     This action is properly removed to this Court, because this Court is the "district and division within which such action is pending." 28 U.S.C. § 1446(a); *see also* 28 U.S.C. § 1441(a); 28 U.S.C. § 89.

## II.    THIS COURT HAS JURISDICTION UNDER 28 U.S.C. § 1332(D)

### A.    There is Minimal Diversity

8.     Plaintiff is a Florida citizen. Ex. 1, Complaint, ¶ 14.

///

NOTICE OF REMOVAL

9.    NDM is a foreign corporation. Ex. 1, Complaint ¶ 22. NDM's principal place of business is Nevada. Request for Judicial Notice in Support of Notice of Removal ["RJN"], filed concurrently herewith, ¶ 1; Morgan Decl., ¶ 13, Ex. 5.

10.    As such, at least one member of the proposed class is a citizen of a different state than NDM. *See* 28 U.S.C. § 1332(d)(2)(A).

**B.    The Number of Members in the Class Exceeds 100**

11.    Plaintiff alleges that the class he seeks to represent is approximately 83,000 members. Ex. 1, Am. Complaint, ¶ 1. *See also* 28 U.S.C. § 1332(d)(5).

**C.    The Amount in Controversy Exceeds $5,000,000**

12.    Plaintiff brought the State Court Action on behalf of "[a]ll persons whose PII [personally identifiable information] was accessed and/or exfiltrated during the Data Breach Incident." *See* Ex. 1, Complaint, ¶ 42; *see also* Ex. 1, Am. Complaint, ¶ 81.

13.    Plaintiff amended in response to NDM's motion to dismiss based upon, among other things, Plaintiff's failure to articulate any injury that could support standing much less any notion of damages.

14.    On March 28, 2024, Janine Bivona-Truman, individually and on behalf of all others similarly situated, filed suit against NDM in the United States District Court for the District of Nevada ("Truman Action"). Morgan Decl., ¶ 9, Ex. 2.

15.    The Truman Action was served on NDM's registered agent for service of process on April 2, 2024. Morgan Decl., ¶ 10; RJN, ¶ 2.

16.    Like Plaintiff, Truman purports to represent "[a]ll persons whose Private Information was compromised as a result of the Data Breach discovered by Nations Direct in December 2023 and for which it provided notice in or about February 2024." Morgan Decl., Ex. 2 [Truman Complaint], ¶ 107; RJN, ¶ 3.

17.    The Truman Action alleges:

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

Morgan Decl., Ex. 2 [Truman Complaint], ¶ 18; RJN, ¶ 4.

18.    On April 1, 2024, NDM was served with a draft class action complaint. The would-be plaintiff, Allen, indicated that he intends to file in the United States District Court for the District of Nevada. *See* Morgan Decl., Ex. 3 [Draft Allen Complaint].

19.    Similar to Plaintiff and Truman, Allen seeks to represent "[a]ll individuals whose PII was subjected to the Data Beach including all individuals who were sent a notice by or on behalf of Defendant related to the December 30, 2023 Data Breach." Morgan Decl., Ex. 3 ¶ 46.

20.    Like in the Truman Action, Allen alleges:

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005. Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars ($5,000,000), excluding interest and costs; (2) there are more than 100 Class members; (3) at least one member of the Class is diverse from the Defendant; and (4) the Defendant is not a government entity.

Morgan Decl., Ex 3, ¶ 10.

21.    On April 10, 2024, a fourth putative class action complaint was received by NDM ["Brown Action"]. The Brown Action was filed in the United States District Court for the District of Nevada. *See* Request for Judicial Notice, Ex. 4 [Brown Complaint]. Morgan Decl., ¶ 12, Ex. 4; RJN, ¶ 5.

///

22.     Like Plaintiff, Truman, and Allen, Brown seeks to represent, "[a]ll individuals whose PII was compromised in the Nations Direct Data Breach for which notice letters were sent on or around February 28, 2024." *See* Morgan Decl., Ex. 4, ¶ 86; RJN, ¶ 6.

23.     Consistent with Truman and Allen, Brown alleges:

> This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Nations Direct. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

Morgan Decl., Ex. 4, ¶ 14; RJN, ¶ 7.

24.     The four plaintiffs each seek to represent the same nationwide class of persons relating to the same breach incident.

25.     Plaintiff's Amended Complaint adopted the Truman Complaint to a significant degree in ways that belatedly make clear that Plaintiff, like the Truman, Allen, and Brown plaintiffs, asserts claims for which the amount allegedly in issue is in excess of $5 million.

Citations to the borrowed allegations are summarized in the chart below.

| Amended Complaint | Truman  Complaint |
|---|---|
| Paragraph 39 | Paragraph 62 |
| Paragraph 46 | Paragraph 45 |
| Paragraph 51 | Paragraph 75, n. 23 |
| Paragraph 52 | Paragraph 76 |
| Paragraph 55 | Paragraph 77 |
| Paragraph 56 | Paragraphs 10, 70 |
| Paragraph 59 | Paragraph 72 |

| | |
|---|---|
| Paragraph 65 | Paragraph 92 |
| Paragraph 70 | Paragraph 103 |
| Paragraph 72 | Paragraph 98 |
| Paragraph 73 | Paragraph 99 |
| Paragraph 74 | Paragraph 98 |
| Paragraph 75 | Paragraph 100 |
| Paragraph 75 | Paragraph 101 |
| Paragraph 77 | Paragraph 102 |
| Paragraph 78 | Paragraph 103 |
| Paragraphs 95-96 | Paragraphs 51-52, 58-60, 62-63 |
| Paragraph 101 | Paragraph 154 |
| Paragraph 112 | Paragraph 154 |
| Paragraph 113 | Paragraph 154 |
| Paragraph 114 | Paragraph 64 |

Plaintiff borrowed so heavily from the Truman Complaint that the Amended Complaint even shares the same typos, such as referring to NDM as being in the healthcare industry.

26.     Plaintiff, by adopting a very substantial portion of the Truman Complaint has adopted Truman's damages theories.

27.     Three of the four actions allege that the amount in controversy exceeds $5,000,000. Accepting these allegations as true, as NDM must at the initial pleading stage, it is more likely than not that the amount in controversy in the State Court Action exceeds $5,000,000. *See Scenic Health Alliance, Inc. v. State Farm Mut. Auto. Ins. Co.*, 124 F.Supp.3d 1291, 1294 (S.D. Fla. 2015) (defendant must prove "that the amount in controversy more likely than not

NOTICE OF REMOVAL

exceeds the [applicable] jurisdictional requirement," "court may rely on evidence put forward by removing defendant, as well as reasonable inferences and deductions drawn from that evidence.").

28.    This conclusion is consistent with Plaintiff's allegation, asserted for the first time in the Amended Complaint, that "the aggregate damages sustained by the Class are in the millions of dollars." *See* Ex. 1, Am. Complaint, ¶ 89.

29.    As such, pursuant to 28 U.S.C. § 1332(d), this Court has jurisdiction over the State Court Action.

DATED:  April 19, 2024

By:   /s/ Michael P. DeSimone
MICHAEL P. DE SIMONE
State Bar No. 119739
Michael@DeSimone.Law
P.O. Box 3571
West Palm Beach, Florida 33402
Telephone: 914.419.7908

DATED:  April 19, 2024          BUCHALTER
A Professional Corporation

By: _____
CHRISTINA M. MORGAN
California State Bar No. 277877
Florida PHV No. 1054020
cmorgan@buchalter.com
BUCHALTER
A Professional Corporation
655 West Broadway, Suite 1600
San Diego, CA  92101
Telephone: 619.219.5335

Attorneys for Defendant

7

# EXHIBIT 1

Filing # 193566671 E-Filed 03/07/2024 04:35:18 PM

INITIALS_____ ID#_____
DATE_____TIME_____

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR WALTON COUNTY, FLORIDA

### CASE NO. 24CA115

JASON KUHN, individually and
on behalf of all others similarly situated,

**CLASS REPRESENTATION**

     Plaintiff,

**JURY TRIAL DEMANDED**

v.

NATIONS DIRECT MORTGAGE, LLC,

     Defendant.

_____/

### SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this Summons and a copy of the complaint or petition in this action on defendant:

NATIONS DIRECT MORTGAGE, LLC
Registered Agent:
**JACKSON YANG**
**720 14TH ST, SACRAMENTO, CA**

     Each defendant is required to serve written defenses to the complaint or petition on **MANUEL S. HIRALDO, HIRALDO P.A., Plaintiff's attorney, whose address is 401 E. Las Olas Blvd., Ste. 1400, Fort Lauderdale, FL 33301, Tel: (954) 400-4713,** within twenty (20) days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

     DATED on **March 7, 2024**

As Clerk of the Court

BY: ____ *Bradley McCrow*
As Deputy Clerk

Filing # 193560757 E-Filed 03/07/2024 04:00:10 PM

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR WALTON COUNTY, FLORIDA

CASE NO.

JASON KUHN, individually and
on behalf of all others similarly situated,                **CLASS REPRESENTATION**

      Plaintiff,                                                      **JURY TRIAL DEMANDED**

v.

NATIONS DIRECT MORTGAGE, LLC,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Jason Kuhn brings this class action against Defendant Nations Direct Mortgage, LLC, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.    Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information ("PII") of Plaintiff and the Class members, including, without limitation: names, addresses, Social Security numbers, and loan numbers.

2.    Defendant is a mortgage lender and servicer.

3.    Defendant is entrusted with an extensive amount of Plaintiff's and the Class members' PII.

4.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties to Plaintiff and the Class members.

5.      On or around December 30, 2023, an intruder gained entry to Defendant's database, accessed Plaintiff's and the Class members' PII, and exfiltrated information from Defendant's systems (the "Data Breach Incident").

6.      Defendant did not notify Plaintiff and the Class members of the incident until March 6, 2024.

7.      Plaintiff's and the Class members' PII that was acquired in the Data Breach Incident can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiff and the Class members face a lifetime risk of identity theft.

8.      Plaintiff's and the Class members' PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect Plaintiff's and the Class members' PII.

9.      Until notified of the Data Breach Incident, Plaintiff and Class Members had no idea their PII had been stolen, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

10.     Defendant disregarded the rights of Plaintiff and the Class members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure their PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party.

11.     Plaintiff brings this action on behalf of all persons whose PII was compromised because of Defendant's failure to: (i) adequately protect their PII; (ii) warn of Defendant's inadequate information security practices; and (iii) effectively secure equipment and the database containing protected PII using

2

reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

12.    Plaintiff and Class members have suffered actual and imminent injuries as a direct result of the Data Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach Incident; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach Incident; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' PII against theft and not allow access and misuse of their personal data by others; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII, and, at the very least, are entitled to nominal damages.

13.    Plaintiff and Class members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

14.    Plaintiff is, and at all times relevant hereto was, a citizen and resident of Walton County, Florida.

15.    Defendant is, and at all times relevant hereto was, a foreign corporation.

3

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $30,000 exclusive of interest, costs, and attorney's fees.

17.     This Court has personal jurisdiction over Defendant under Florida Stat. § 48.193, because Defendant personally or through its agents operated, conducted, engaged in, or carried on a business or business venture in Florida; had offices in Florida; committed tortious acts in Florida; and/or breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida.

18.     Venue for this action is proper in this Court pursuant to Fla. Stat. § 47.051 because the cause of action accrued in this County.

## FACTS

19.     At the time of the Data Breach Incident, Defendant maintained Plaintiff's and the Class members PII in its database and systems.

20.     By obtaining, collecting, and storing Plaintiff's and Class members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

21.     Plaintiff and Class members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

22.     Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class members' PII from involuntary disclosure to third parties.

4

23.    Prior to the Data Breach Incident, Defendant should have (i) encrypted or tokenized the sensitive PII of Plaintiff and the Class members, (ii) deleted such PII that it no longer had reason to maintain, (iii) eliminated the potential accessibility of the PII from the internet and its website where such accessibility was not justified, and (iv) otherwise reviewed and improved the security of its network system that contained the PII.

24.    Prior to the Data Breach Incident, on information and belief, Defendant did not (i) encrypt or tokenize the sensitive PII of Plaintiff and the Class members, (ii) delete such PII that it no longer had reason to maintain, (iii) eliminate the potential accessibility of the PII from the internet and its website where such accessibility was not justified, and (iv) otherwise review and improve the security of its network system that contained the PII.

25.    On or around December 30, 2023, an intruder gained unauthorized access to Defendant's database.

26.    On or about March 6, 2024, Defendant emailed Plaintiff and the Class members a form notice attempting to minimize the Data Breach Event, while admitting that sensitive PII had been compromised and stolen.

27.    Contrary to the self-serving narrative in Defendant's form notice, Plaintiff's and Class members' unencrypted information may end up for sale on the dark web and/or fall into the hands of companies that will use the detailed PII for targeted marketing without the approval.

28.    Defendant failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and the Class members.

29.    Plaintiff and the Class members have taken reasonable steps to maintain the confidentiality of their PII, relied on Defendant to keep their PII confidential and securely maintained,

to use this information for business purposes only, and to make only authorized disclosures of this information.

30.     Defendant could have prevented the Data Breach Incident by properly securing and encrypting Plaintiff's and Class members' PII, or Defendant could have destroyed the data, especially old data from former inquiries and/or customers that Defendant had no legal right or responsibility to retain.

31.     Defendant's negligence in safeguarding Plaintiff's and the Class members' PII is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data, especially in the financial sector.

32.     Despite the prevalence of public announcements and knowledge of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and the Class members from being compromised.

33.     The ramifications of Defendant's failure to keep secure Plaintiff's and the Class members' PII are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

34.     The PII of Plaintiff and the Class Members was stolen to engage in identity theft and/or to sell it to criminals who will purchase the PII for that purpose.

35.     Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.

36.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Plaintiff's and the Class members' PII, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and the Class members as a result of a breach.

6

37.     Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

38.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, potentially amounting to millions of individuals' detailed and confidential personal information and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

39.     The injuries to Plaintiff and the Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Plaintiff's and the Class members' PII.

40.     Plaintiff has suffered and will continue to suffer injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third-parties and criminals.

41.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

### PROPOSED CLASS

42.     Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). The "Class" that Plaintiff seeks to represent is defined as:

> **All persons whose PII was accessed and/or exfiltrated during the Data Breach Incident.**

43.     Defendant and its employees or agents are excluded from the Class.

7

**NUMEROSITY**

44.     The Data Breach Incident has impacted several thousand persons. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

45.     Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**COMMON QUESTIONS OF LAW AND FACT**

46.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: [1] Whether and to what extent Defendant had a duty to protect the PII Plaintiff and Class members; [2] Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members; [3] When Defendant actually learned of the Data Incident; [4] Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class members that their PII had been compromised; [4] Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach Incident; [5] Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach Incident to occur; [6] Whether Plaintiff and the Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct; [7] Whether Plaintiff and the Class members are entitled to restitution as a result of Defendant's wrongful conduct; and [8] Whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach Incident.

47.     The common questions in this case are capable of having common answers.  Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

48.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

49.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

51.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

52.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-51 as if fully set forth herein.

53.    Defendant was provided and entrusted with certain PII, including Plaintiff's and the Class members' information, names, dates of birth, Social Security numbers, addresses, phone numbers, driver's license numbers, and email addresses.

54.    Plaintiff and the Class members entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

55.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class members could and would suffer if the PII were wrongfully disclosed.

56.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of Plaintiff's and the Class members' PII involved an unreasonable risk of harm to Plaintiff and the Class members, even if the harm occurred through the criminal acts of a third party.

57.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and the Class members' information in Defendant's possession was adequately secured and protected.

58.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain.

59.     Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and the Class members' PII.

60.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class members. That special relationship arose because Plaintiff and the Class members entrusted Defendant with their confidential PII, a necessary part of obtaining treatment or employment from Defendant.

61.     Defendant was subject to an independent duty, untethered to any contract between Defendant and Plaintiff and the Class members.

62.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

63.     Plaintiff and the Class members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class members, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

64.     Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class members. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach Incident as set forth herein. Defendant's misconduct also included its decision not to comply with industry standards for the safekeeping of Plaintiff's and the Class members' PII, including basic encryption techniques freely available to Defendant.

65.     Plaintiff and the Class members had no ability to protect their PII that was in, and remains in, Defendant's possession.

11

66.     Defendant was in a position to protect against the harm suffered by Plaintiff and the Class members as a result of the Data Breach Incident.

67.     Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Class members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

68.     Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Class members.

69.     Defendant has admitted that the PII of Plaintiff and the Class members was wrongfully accessed by and exfiltrated by unauthorized third persons.

70.     Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Class members during the time the PII was within Defendant's possession or control.

71.     Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach Incident.

72.     Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect Plaintiff's and the Class members' PII in the face of increased risk of theft.

73.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class members by failing to have appropriate procedures in place to detect and prevent dissemination of their PII.

12

74.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Plaintiff's and the Class members' PII it was no longer required to retain.

75.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class members the existence and scope of the Data Breach Incident.

76.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class members, the PII of Plaintiff and the Class members would not have been compromised.

77.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class members and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class members. Plaintiff's and the Class members' PII was accessed and exfiltrated as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

78.    Additionally, Section 5 of the FTC Act prohibits "unfair . .. practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

79.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class members.

80.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se.*

81.    Plaintiff and the Class members are within the class of persons that the FTC Act

was intended to protect.

82.    The harm that occurred as a result of the Data Breach Incident is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class members.

83.    As a direct and proximate result of Defendant's negligence and negligence *per se,* Plaintiff and the Class members have suffered and will suffer injury, including but not limited to: (i) threat of identity theft; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (v) costs associated with placing freezes on bank accounts and credit reports; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect Plaintiff's and the Class members' PII; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach Incident for the remainder of the lives of Plaintiff and the Class members.

84.    As a direct and proximate result of Defendant's negligence and negligence *per se,* Plaintiff and the Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

85.     Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

86.     As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class members are at an increased risk of identity theft or fraud.

87.     As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class members are entitled to and demand actual consequential, and nominal damages and injunctive relief.

**COUNT II**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

88.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-51 as if fully set forth herein.

89.     A relationship existed between Plaintiff and the Class members and Defendant in which Plaintiff and the Class members put their trust in Defendant to protect their private information and Defendant accepted that trust.

90.     Defendant breached the fiduciary duty that it owed to Plaintiff and the Class members by failing to protect Plaintiff's and the Class members' PII.

91.     Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and the Class members.

92.     But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class members would not have occurred.

93.     Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class members.

94.     As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and the Class members are entitled to and demand actual, consequential, and nominal damages and injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b)  Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class members;

c)  Injunctive relief, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order: (1) requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws; (2) requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members; (3) requiring

16

Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Member's personal identifying information; (4) prohibiting Defendant from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database; (5) requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors; (6) requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring; (7) requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures; (8) requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems; (9) requiring Defendant to conduct regular database scanning and securing checks; (10) requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members; (11) requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to

17

inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (12) requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information; (13) requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated; (14) requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; (15) requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and (16) for a period of 10 years, appointing a qualified and independent third party assessor to conduct attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

d) For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

e) For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f) For prejudgment interest on all amounts awarded; and

g) Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

ATED: March 7, 2024

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**THE LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301
*Counsel for Plaintiff*

19

## RETURN OF SERVICE

| State of Florida | County of Walton | Circuit Court |
|---|---|---|

Case Number: 24CA115

Plaintiff:
**JASON KUHN, individually and on behalf of all others similarly situated**

vs.

Defendant:
**NATIONS DIRECT MORTGAGE, LLC**

For:
Manuel Hiraldo
Hiraldo P.A.
401 E. Las Olas Blvd.
Ste 1400
Fort Lauderdale, FL 33301

Received by L & L Process, LLC. on the 7th day of March, 2024 at 7:52 pm to be served on **NATIONS DIRECT MORTGAGE, LLC REGISTERED AGENT: JACKSON YANG, 720 14TH ST, SACRAMENTO, CA 95814**.

I, Krystalyn Souza, do hereby affirm that on the **8th day of March, 2024** at **2:40 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Summons and Class Action Complaint** with the date and hour of service endorsed thereon by me, to: **JACKSON YANG** as **REGISTERED AGENT** for **NATIONS DIRECT MORTGAGE, LLC**, at the address of: **720 14TH ST, SACRAMENTO, CA 95814**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 36-40, Sex: M, Race/Skin Color: ASIAN, Height: 5'7-6'0, Weight: 141-160, Hair: BLACK, Glasses: - , Eyes: Brown

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. Under penalty of perjury, I declare that I have read the foregoing documents, and that the facts stated in it are true. NO NOTARY REQUIRED PURSUANT TO F.S.92.525(2)

**Krystalyn Souza**
Process Server

**L & L Process, LLC.**
**13876 SW 56 Street**
**Suite 200**
**Miami, FL 33175**
**(305) 772-8804**

Our Job Serial Number: LLP-2024000937

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2n

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR WALTON COUNTY, FLORIDA

### CASE NO. 24CA115

JASON KUHN, individually and
on behalf of all others similarly situated,

   Plaintiff,

v.

NATIONS DIRECT MORTGAGE, LLC,

   Defendant.

_____/

**CLASS REPRESENTATION**

**JURY TRIAL DEMANDED**

### FIRST AMENDED CLASS ACTION COMPLAINT[1]

  Plaintiff Jason Kuhn brings this class action against Defendant Nations Direct Mortgage, LLC, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

  1. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information ("PII") of Plaintiff and approximately 83,000 Class members, including, without limitation: names, addresses, dates of birth, Social Security numbers, loan numbers, financial and bank account information.

  2. Defendant is a mortgage lender and servicer.

  3. Defendant was entrusted with an extensive amount of Plaintiff's and the Class members' PII.

---

[1] Amended as a matter of course pursuant to Florida Rule of Civil Procedure 1.190(a) before a responsive pleading has been served.

1

4.      By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed nondelegable legal and equitable duties to Plaintiff and the Class members.

5.      On or around December 30, 2023, an intruder gained entry to Defendant's database, accessed Plaintiff's and the Class members' PII, and exfiltrated information from Defendant's systems (the "Data Breach Incident").

6.      Defendant did not notify Plaintiff and the Class Members of the incident until March 6, 2024. During this period of over two months, Defendant deprived Plaintiff and the Class Members of their right to take active measures to protect their PII.

7.      Plaintiff's and the Class members' PII that was acquired in the Data Breach Incident can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. The permanent loss of their Social Security numbers and other PII exposes Plaintiff and Class Members to an ongoing, lifetime risk of identity theft.

8.      Plaintiff's and the Class members' PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect Plaintiff's and the Class members' PII.

9.      Until notified of the Data Breach Incident, Plaintiff and Class Members had no idea their PII had been stolen, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

10.     Defendant disregarded the rights of Plaintiff and the Class members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure their PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures

2

regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party.

11.    Plaintiff brings this action on behalf of all persons whose PII was compromised because of Defendant's failure to: (i) adequately protect their PII; (ii) warn of Defendant's inadequate information security practices; and (iii) effectively secure equipment and the database containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence.

12.    Plaintiff and Class members have suffered actual and imminent injuries as a direct result of the Data Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach Incident; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach Incident; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' PII against theft and not allow access and misuse of their personal data by others; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII, and, at the very least, are entitled to nominal damages.

13.    Plaintiff and Class members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

14.     Plaintiff is, and at all times relevant hereto was, a citizen and resident of Walton County, Florida.

15.     Plaintiff greatly values his privacy and PII, especially in connection with receiving loan and financial services. Prior to the Data Breach, Plaintiff took reasonable steps to maintain the confidentiality of his PII.

16.     Plaintiff is very careful about sharing his PII. He has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

17.     Plaintiff received a letter dated March 6, 2024, from Defendant concerning the Data Breach Incident. The letter stated that unauthorized actors gained access to files on Defendant's network. The compromised files contained Plaintiff's name, address, loan number, Social Security number.

18.     Recognizing the present, immediate, and substantially increased risk of harm Plaintiff faces, Defendant offered him a two-year subscription to a credit monitoring service. Plaintiff has not signed up for the program as he does not trust Defendant's chosen vendor with his PII. Additionally, Plaintiff does not believe this is sufficient to protect his identity from the ongoing risks of theft he faces.

19.     Since learning of the Data Breach, Plaintiff has spent additional time reviewing his bank statements, credit cards, and reviewing his emails for fraud alerts. Since March 6, 2024, he has spent several hours reviewing his bank, credit and debit card statements; and reviewing his emails for fraud alerts or otherwise suspicious account activity.

20.     Plaintiff plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his depository, credit, and other accounts for any unauthorized activity. Indeed, Defendant's notice directs Plaintiff to take these steps:

"it is important to remain vigilant and to review and monitor your accounts, account statements, and free credit reports for any suspicious activity, fraud, or identity theft. Additional steps you can take to safeguard your personal information is included herein on the attached disclosure."

21.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

22.    Defendant is, and at all times relevant hereto was, a foreign corporation.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $30,000 exclusive of interest, costs, and attorney's fees.

24.    This Court has personal jurisdiction over Defendant under Florida Stat. § 48.193, because Defendant personally or through its agents operated, conducted, engaged in, or carried on a business or business venture in Florida; had offices in Florida; committed tortious acts in Florida; and/or breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida.

25.    Venue for this action is proper in this Court pursuant to Fla. Stat. § 47.051 because the cause of action accrued in this County.

## FACTS

26.    On or around December 30, 2023, an intruder gained unauthorized access to Defendant's database.

27.    On or about March 6, 2024, Defendant emailed Plaintiff and the Class members a form notice attempting to minimize the Data Breach Event, while admitting that sensitive PII had been compromised and stolen.

5

28.     Contrary to the self-serving narrative in Defendant's form notice, Plaintiff's and Class members' unencrypted information may end up for sale on the dark web and/or fall into the hands of companies that will use the detailed PII for targeted marketing without the approval.

29.     At the time of the Data Breach Incident, Defendant maintained Plaintiff's and the Class members PII in its database and systems.

30.     By obtaining, collecting, and storing Plaintiff's and Class members' PII, Defendant assumed nondelegable legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

31.     Sophisticated companies like Defendant are aware of the different types of threat actors operating across the internet and the types of criminal acts that cyber thieves employ for profit. Accordingly, it is imperative that Defendant guard against those criminal exploits.

32.     Plaintiff and Class members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

33.     Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class members' PII from involuntary disclosure to third parties.

34.     Prior to the Data Breach Incident, Defendant should have (i) encrypted or tokenized the sensitive PII of Plaintiff and the Class members, (ii) deleted such PII that it no longer had reason to maintain, (iii) eliminated the potential accessibility of the PII from the internet and its website where such accessibility was not justified, and (iv) otherwise reviewed and improved the security of its network system that contained the PII.

35.     Prior to the Data Breach Incident, on information and belief, Defendant did not (i) encrypt or tokenize the sensitive PII of Plaintiff and the Class members, (ii) delete such PII that it no

longer had reason to maintain, (iii) eliminate the potential accessibility of the PII from the internet and its website where such accessibility was not justified, and (iv) otherwise review and improve the security of its network system that contained the PII.

36.    Contrary to industry-standard practices, Defendant failed to encrypt Plaintiff's and Class Members' PII, failed to delete it after it no longer needed to be retained, stored it in a vulnerable, internet-accessible environment, failed to monitor and detect its movement from Defendant's network to the internet in real time, and failed to monitor or audit the practices of Defendant's cybersecurity vendors, if any. Had Defendant implemented such expected measures, the Data Breach Incident could have been prevented or mitigated.

37.    Defendant also failed to monitor or audit the cybersecurity practices of its cybersecurity vendors, continued to accept and store PII even after it knew or should have known of the Data Breach Incident, and unreasonably delayed in providing notice of the Data Breach Incident to Plaintiff and Class Members, who were consequently prevented from taking timely self-protection measures.

38.    Defendant did not use reasonable security procedures and practices suitable or adequate to protect the sensitive, unencrypted information they were maintaining for consumers.

39.    Defendant's security failures also demonstrate that it failed to honor it express and implied promises to Plaintiff and the Class Members, including by failing to:

(a) maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

(b) adequately protect patients' PII from unauthorized disclosure;

(c) implement policies and procedures to prevent, detect, contain, and correct security violations;

(d) implement procedures to regularly review records of information system activity, such as audit logs, access reports, and security incident tracking reports;

(e) protect against any reasonably anticipated threats or hazards to the security or integrity of PII; and

(f) effectively train all members of its workforce on the policies and procedures with respect to PII as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PII.

40.    Had Defendant implemented such data security protocols, the consequences of the Data Breach Incident could have been avoided, or at least significantly reduced (inasmuch as the exposure could have been detected earlier); the amount of PII compromised could have been greatly reduced; and affected consumers could have been notified—and taken self-protection and mitigating actions—much sooner.

41.    Until notified of the Data Breach, Plaintiff and Class Members had no idea that their PII had been compromised and that they were—and will continue indefinitely to be—at significant risk of identity theft and other forms of personal, social, and financial harm.

42.    Plaintiff and the Class members have taken reasonable steps to maintain the confidentiality of their PII, relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

43.    Defendant could have prevented the Data Breach Incident by properly securing and encrypting Plaintiff's and Class members' PII, or Defendant could have destroyed the data, especially old data from former inquiries and/or customers that Defendant had no legal right or responsibility to retain.

44.     Defendant's negligence in safeguarding Plaintiff's and the Class members' PII is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data, especially in the financial sector.

45.     Defendant is a sophisticated mortgage lender that knew or should have known that PII – especially Social Security numbers – is an invaluable commodity and a frequent target of hackers. Indeed, on its website, Defendant acknowledged the importance of protecting Plaintiff's and the Class Members' PII: "Our goal is to protect your information on the Internet in the same way that we protect it in all other ways we interact with you." https://myndm.com/security-statement/.

46.     There were a record 1,802 data breaches in 2022, and 1,862 data breaches in 2021, surpassing 2020's total of 1,108 and the previous record of 1,506 set in 2017.

47.     Further, there have been many recent high profile data breaches of other industry leading companies, including Microsoft (250 million records; December 2019), Wattpad (268 million records; June 2020), Facebook (267 million users; April 2020), Estee Lauder (440 million records; January 2020), Whisper (900 million records; March 2020), and Advanced Info Service (8.3 billion records; May 2020).

48.     Defendant knew or should have known that its electronic records, containing sensitive financial and personal information, among other valuable personal information, would be and/or had been targeted by cybercriminals.

49.     Defendant was aware of prior data breaches affecting banks and lenders.

50.     PII is valuable to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information is sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200. Anita George, *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs*,

Digital Trends (Oct. 16, 2019) https://www.digitaltrends.com/computing/personal-data-sold-onthe-dark-web-how-much-it-costs/. Criminals also can purchase access to entire sets of information obtained from company data breaches from $900 to $4,500. *In the Dark*, *VPNOverview*, 2019, https://vpnoverview.com/privacy/anonymous- browsing/in-the-dark/.

51.     Social Security numbers are among the most sensitive kind of personal information that is subject to hacking and theft because they may be put to a variety of fraudulent uses and are extremely difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.

Social Security Administration, *Identity Theft and Your Social Security Number*, July 2021, https://www.ssa.gov/pubs/EN-05-10064.pdf.

52.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

53.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new

number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number." Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

54.    The information compromised in the Data Breach Incident is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach Incident is impossible to "close" and difficult, if not impossible, to change: names, dates of birth, financial history, and Social Security numbers.

55.    This data commands a much higher price on the black market than other PII. Martin Walter, senior director at cybersecurity firm RedSeal, Inc., explained "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x in price on the black market." Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, NETWORKWORLD (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

56.    The PII of Plaintiffs and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that purpose. Among other forms of fraud, identity thieves armed with fraudulently obtained Social Security numbers may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

57.    Despite the prevalence of public announcements and knowledge of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and the Class members from being compromised.

11

58.    The ramifications of Defendant's failure to keep secure Plaintiff's and the Class members' PII are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

59.    According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

United States Government Accountability Office, Report to Congressional Requesters, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf

60.    The PII of Plaintiff and the Class Members was stolen to engage in identity theft and/or to sell it to criminals who will purchase the PII for that purpose.

61.    Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.

62.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Plaintiff's and the Class members' PII, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and the Class members as a result of a breach.

63.    Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

64.     Indeed, in its notice of regarding the incident, Defendant recognized that each victim now faces a present and continuing risk of identity theft and fraud, offering Plaintiff and Class Members limited identity theft protection through "Kroll". Despite the risk that will remain for the lives of Plaintiff and Class Members, Defendant only offered identity protection services for two years. These services offered by Defendant are woefully insufficient to protect Plaintiff and Class Members from the lifelong ramifications of having their highly confidential PII accessed, acquired, exfiltrated, and/or published on the internet.

65.     Making matters worse, Defendant advised Plaintiff and the Class Members that they need to spend their own time and money mitigating the fallout from the Data Breach Incident. In other words, Defendant wants Plaintiff and the Class Members to bear the burden for its negligence.

66.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to thousands of individuals' detailed and confidential personal information and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

67.     The injuries to Plaintiff and the Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Plaintiff's and the Class members' PII.

68.     Plaintiff has suffered and will continue to suffer injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties and criminals.

69.     The exposed PII of Plaintiff and Class Members can be and in certain cases has already been sold to other identity thieves or on the dark web—a hidden network of black-market websites that serves as a "haven for all kinds of illicit activity (including the trafficking of stolen personal information

captured through means such as data breaches or hacks)." Ellen Sirull, Paid Content: What is the dark web? FOX NEWS (Mar. 27, 2018), https://www.foxnews.com/tech/paid-content-what-is-the-dark-web. Cyber criminals now can indefinitely access, offer for sale, and use the unencrypted, unredacted PII of Plaintiff and Class Members for nefarious ends.

70.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

71.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

72.    Plaintiff and Class Members are presently experiencing substantial risk of out-of-pocket fraud losses, such as loans and accounts opened in their names, fraudulent charges, tax return fraud, utility bills opened in their names, and similar identity theft.

73.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

74.    Plaintiff and Class Members are also incurring, and may continue incurring for the remainder of their lifetimes, out-of-pocket costs for protective measures such as identity theft protection and credit monitoring fees (for any credit monitoring obtained in addition to or in lieu of the inadequate monitoring offered by Defendant), credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach Incident.

75.    Plaintiff and Class Members also suffered damage to or depreciation of their PII when it was acquired by the cyber thieves in the Data Breach Incident.

76.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and other accounts and records for misuse. Defendant's own notice of

data breach instructs Plaintiff and Class Members regarding the time that they will need to spend monitoring their own accounts and statements.

77.     Plaintiff and Class Members have suffered actual injury as a direct result of the Data Breach Incident. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach Incident relating to:

   (a) Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

   (b) Purchasing credit monitoring and identity theft prevention;

   (c) Placing "freezes" and "alerts" with credit reporting agencies;

   (d) Spending time on the phone with or at a financial institution or government agency to dispute fraudulent charges and/or claims;

   (e) Contacting financial institutions and closing or modifying financial accounts; and

   (f) Closely reviewing and monitoring medical insurance accounts, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

78.     Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

79.     Plaintiff has experienced and continues to experience mental anguish and stress related to the disclosure of her PII, the invasion of his privacy, and the threats of identity theft that he will continue to endure for years.

80.     As a direct and proximate result of Defendant's actions and inaction, Plaintiff and Class Members have suffered a loss of privacy and face a substantial and present risk of harm.

## CLASS ALLEGATIONS

### PROPOSED CLASS

81.     Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). The "Class" that Plaintiff seeks to represent is defined as:

**All persons whose PII was accessed and/or exfiltrated during the Data Breach Incident.**

82.     Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

83.     The Data Breach Incident has impacted approximately 83,000 persons. The members of the Class, therefore, are so numerous that joinder of all members is impracticable.

84.     Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### COMMON QUESTIONS OF LAW AND FACT

85.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: [1] Whether and to what extent Defendant had a duty to protect the PII Plaintiff and Class members; [2] Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members; [3] When Defendant actually learned of the Data Incident; [4] Whether Defendant

adequately, promptly, and accurately informed Plaintiff and Class members that their PII had been compromised; [4] Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach Incident; [5] Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach Incident to occur; [6] Whether Plaintiff and the Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct; [7] Whether Plaintiff and the Class members are entitled to restitution as a result of Defendant's wrongful conduct; and [8] Whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach Incident.

86.    The common questions in this case are capable of having common answers.   Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

87.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

88.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

89.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the

Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

90.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

91.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-90 as if fully set forth herein.

**Foreseeability**

92.    Prior to the Data Breach Incident, each Defendant knew or should have known that threat attackers were targeting healthcare providers such as Defendant in an effort to obtain personally identifiable information and misuse it to commit fraud and identity theft, particularly when stored in an internet-accessible environment, in at least the following respects:

(a) Defendant was aware of previous data breaches that had targeted banks and lenders, including breaches that affected information of their competitors;

(b) Hackers are known to routinely attempt to steal such information and use it for nefarious purposes; and

18

(c) Publicly available industry warnings regarding threat attackers' efforts to obtain such information for ransom or misuse were widely and readily available to Defendant.

## Duty, Breach, and Causation

93.     Prior to the Data Breach, Defendant knowingly and intentionally acquired the PII of Plaintiff and Class Members.

94.     In knowingly and intentionally acquiring the PII of Plaintiff and Class Members, Defendant assumed a duty to use reasonable care, including implementing reasonable security practices and procedures, to safeguard the PII of Plaintiff and Class Members against unauthorized access, acquisition, and misuse.

95.     Defendant failed to use reasonable care by storing the PII of Plaintiff and Class Members in an internet-accessible environment under the following circumstances:

(a) The PII of Plaintiff and Class Members was not encrypted.

(b) The PII of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, including the PII of Plaintiff and Class Members with whom Defendant had not had a relationship for years, was not removed from Defendant's network.

(c) The movement of the PII of Plaintiff and Class Members from Defendant's network to the internet was not monitored and detected in real time.

96.     Under like circumstances, a reasonably careful person would have done the following:

(a) Encrypted the PII.

(b) Removed from Defendant's network the PII that Defendant had no reasonable need to store in an internet-accessible environment, including the PII of individuals with whom Defendant had not had a relationship for years.

19

(c) Monitored and detected in real time the movement of the PII from the network to the internet.

(d) Maintained an adequate data security system to reduce the risk of data breaches and cyber attacks.

(e) Implemented policies and procedures to prevent, detect, contain, and correct security violations.

(f) Implemented procedures to regularly review records of information system activity, such as audit logs, access reports, and security incident tracking reports.

(g) Effectively trained all members of its workforce on the policies and procedures with respect to PII as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of PII.

97. By failing to take the above security measures, Defendant breached duties to Plaintiff and the Class Members.

98. Defendant's negligence directly and in natural and continuous sequence produced or contributed substantially to producing Plaintiff's and Class Members' damages because of the following:

(a) Defendant's failure to encrypt the PII of Plaintiff and Class Members allowed the threat attacker to acquire their PII.

(b) Defendant's failure to remove from its network the PII of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, including the PII of Plaintiff and Class Members with whom Defendant had not had a relationship for years, allowed the threat attacker to acquire their PII.

20

(c) Defendant's failure to monitor in real time the movement of the PII of Plaintiff and Class Members from Defendant's network to the internet allowed the threat attacker to exfiltrate the PII without detection and therefore without any attempt to halt the exfiltration before its completion.

99.     But for Defendant's negligence, the damage to Plaintiff and Class Members would not have occurred because of the following:

(a) If Defendant had encrypted the PII of Plaintiff and Class Members, the threat attacker would not have acquired their PII.

(b) If Defendant had removed from its network the PII of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, the threat attacker would not have acquired their PII.

(c) If Defendant had monitored in real time the movement of the PII of Plaintiff and Class Members from Defendant's network to the internet, the exfiltration of the PII could have been halted before its completion.

100.    Defendant's negligence was a legal cause of damage to Plaintiff and Class Members, even if it operated in combination with the acts of the threat attacker, because the acts of and the harmed caused by the threat attacker were reasonably foreseeable, and Defendant's negligence contributed substantially to producing such damage to Plaintiff and Class Members.

**Damages**

101.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft, including unauthorized charges; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII, including the exposure of their PII on the dark web

and the substantial risk of future harm; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the present and continuing risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII in their continued possession; (viii) damages consisting of the cost of identity theft protection services for the remainder of the lives of Plaintiff and Class Members; and (ix) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII resulting from the Data Breach for the remainder of the lives of Plaintiff and Class Members.

102. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risk of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

103. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are now at an increased risk of identity theft or fraud.

104. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## COUNT II
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

105.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-90 as if fully set forth herein.

106.     A relationship existed between Plaintiff and the Class members and Defendant in which Plaintiff and the Class members put their trust in Defendant to protect their private information and Defendant accepted that trust.

107.     Defendant publicly acknowledged this relationship on its website: "Our goal is to protect your information on the Internet in the same way that we protect it in all other ways we interact with you. https://myndm.com/security-statement/.

108.     Defendant breached the fiduciary duty that it owed to Plaintiff and the Class members by failing to protect Plaintiff's and the Class members' PII.

109.     Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and the Class members.

110.     But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class members would not have occurred.

111.     Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class members.

112.     As a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft, including unauthorized charges; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII, including the exposure of their PII on the dark web and the substantial risk of future harm; (iv) out-of-pocket expenses associated with the prevention,

detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the present and continuing risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII in their continued possession; (viii) damages consisting of the cost of identity theft protection services for the remainder of the lives of Plaintiff and Class Members; and (ix) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII resulting from the Data Breach for the remainder of the lives of Plaintiff and Class Members.

113.    Additionally, as a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered and will suffer the continued risk of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

114.    As a direct and proximate result of Defendant's breach, Plaintiff and Class Members are now at an increased risk of identity theft or fraud.

115.    As a direct and proximate result of Defendant's breach, Plaintiffs and Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class members;

c) Injunctive relief, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order: (1) requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws; (2) requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members; (3) requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Member's personal identifying information; (4) prohibiting Defendant from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database; (5)

requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors; (6) requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring; (7) requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures; (8) requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems; (9) requiring Defendant to conduct regular database scanning and securing checks; (10) requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members; (11) requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (12) requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies,

programs, and systems for protecting personal identifying information; (13) requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated; (14) requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; (15) requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and (16) for a period of 10 years, appointing a qualified and independent third party assessor to conduct attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

d) For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

e) For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f) For prejudgment interest on all amounts awarded; and

g) Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 10, 2024, I electronically served this First Amended Complaint on all counsel of record.


DATED: April 10, 2024

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**THE LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301
*Counsel for Plaintiff*

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR WALTON COUNTY, FLORIDA**

**CASE NO. 24CA115**

| | |
|---|---|
| JASON KUHN, individually and on behalf of all others similarly situated, | **MOTION TO DISMISS CLASS ACTION COMPLAINT** |
|        Plaintiff, | |
| v. | |
| NATIONS DIRECT MORTGAGE, LLC, | |
|        Defendant. | |

Defendant Nations Direct Mortgage, LLC ("NDM") hereby moves pursuant to Fla. R. Civ. P. 1.140 to dismiss the Class Action Complaint filed by Jason Kuhn, individually and on behalf of all others similarly situated.

## I.    INTRODUCTION

NDM was the victim of a crime. An intruder accessed its systems, including folders containing personal information of borrowers and employees. Thankfully, there is no evidence that the intruder actually *took* any information. Despite the minimal risk, NDM notified borrowers and employees of the incident. NDM also offered them generous identity theft monitoring and protection at no cost, including one million dollars in identity fraud loss reimbursement.

Plaintiff, a borrower, received notice of the breach incident on March 6, 2024. The very next day, he filed this putative class action.

The action should be dismissed. Plaintiff lacks standing to pursue NDM, because he has not suffered and does not adequately allege an "injury-in-fact." Even if he had standing, Plaintiff's claims should still be dismissed for failure to state a cause of action. For both

1

negligence and breach of fiduciary duty, Plaintiff has failed to adequately plead that NDM's acts or omissions were the proximate cause of harm. Plaintiff has also failed to allege the existence of actual damages, as required to maintain his negligence cause of action.

Further, Plaintiff's negligence claim fails insofar as it depends on an alleged violation of Section 5 of the FTC Act. The case law is clear; an alleged statutory violation cannot support a negligence cause of action if the statute does not create a private right of action. Finally, Plaintiff's breach of fiduciary duty claim fails because, as a matter of law, mortgage lenders and servicers do not owe borrowers a fiduciary duty. For these reasons, NDM respectfully requests that this Court dismiss Plaintiff's putative class action without leave to amend.

## II.    <u>FACTUAL BACKGROUND</u>

Plaintiff alleges that, on or around December 30, 2023, an intruder gained entry to NDM's database, accessed Plaintiff's and other class member's personally identifiable information, and exfiltrated information from NDM's systems. Compl., ¶¶ 5, 25. Plaintiff contends, with no factual support, that the breach event was caused by NDM's "negligent and/or careless acts and omissions and the failure to protect" Plaintiff's personal information. Compl., ¶ 8; *see also* Compl., ¶¶ 10, 28, 30, 31, 70-75.

NDM sent a Notice of Potential Data Breach to Plaintiff on March 6, 2024 (the "Notice"). Compl., ¶¶ 6, 26. The Notice[1] states, in relevant part, that personal information was

---

[1] Plaintiff should have attached the Notice of Potential Data Breach to the Complaint as a "document on which action may be brought or defense made." Fla. R. Civ. P. 1.130(a). Nonetheless, this Court may consider the Notice of Potential Data Breach because it is impliedly incorporated into the Complaint. The Complaint refers to the notice, was the impetus for filing suit, and relates directly to the issue of standing. *See Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So.3d 1246 (Fla. 2nd DCA 2011) (settlement agreement was impliedly incorporated into class action complaint and properly considered on motion to dismiss); see also Compl., ¶¶ 6, 26. Any exhibits attached to the complaint are "considered a part thereof for all purposes." Fla. R. Civ. P. 1.130(b).

<u>potentially</u> removed and that NDM has "not identified any fraudulent use of [] personal information as a result of this incident." Exhibit 1. NDM notified Plaintiff and all other affected persons that it has "secured the services of Kroll to provide identity theft monitoring services at no cost [] for twenty-four (24) months. [The] identity monitoring services include Credit Monitoring, Web Watcher, $1 Million Identity Fraud Loss Reimbursement, Fraud Consultation, and identity Theft Restoration." Exhibit 1.

Rather than utilize the generous prophylactic measures provided by NDM, Plaintiff filed this suit for negligence and breach of fiduciary duty <u>the day after Notice was sent</u>. *See generally* Complaint. Plaintiff seeks to recover, on behalf of himself and the other class members, for an alleged "significant risk of identity theft." Compl., ¶ 9; *see also* Compl., ¶¶ 7, 12, 40, 86. Plaintiff does not allege facts to support the conclusion that he and the other class members are actually at significant risk of identity theft.

Plaintiff also alleges, in conclusory fashion, that he and other class members:

> have suffered actual and imminent injuries as a direct result of the Data Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach Incident; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach Incident; (f) actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' PII against theft and now allow access and misuse of their personal data by others; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII, and, at the very least, are entitled to nominal damages.

Compl., ¶ 12; *see also* Compl., ¶¶ 37, 83, 84. Plaintiff does not allege any specific, concrete

harm as a result of the breach incident, which is unsurprising since he filed action immediately

after learning of the incident.

## III.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Standing

Lack of standing is typically considered an affirmative defense. *Llano Financing Group,*

*LLC v. Yespy*, 228 So.3d 108, 112 (Fla. 4th DCA 2017). "If the face of the complaint contains

allegations which demonstrate the existence of an affirmative defense, then such a defense may

be considered on a motion to dismiss." *Papa John's Int'l, Inc. v. Cosentino*, 916 So.2d 977, 983

(Fla. 4th DCA 2005); *see also* Fla. R. Civ. P. 1.110(d).

### B.    Motion to Dismiss for Failure to State a Cause of Action

A defendant may move to dismiss a complaint, or any part thereof, for failure to state a

cause of action. Fla. R. Civ. P. 1.140(b). "When ruling on a motion to dismiss, the court 'must

limit itself to the four corners of the complaint, including any attached or incorporated

exhibits…" *Skupin v. Hemisphere Media Grp.*, 314 So.3d 353, 355 (Fla. 3rd DCA 2020). "When

an exhibit contradicts the allegations, the exhibit controls, 'the variance is fatal[,] and the

complaint is subject to dismissal for failure to state a cause of action." *Polk State College Dist.*

*Bd. of Ttees. v. Fisher*, --- So.3d ---, 2024 WL 510104 (Fla. 6th DCA Feb. 9, 2024)

The complaint, together with all incorporated exhibits, must state "a short and plain

statement of the ultimate facts showing that the pleader is entitled to relief." *W.R. Townsend*

*Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So.2d 297, 299 (Fla. 1st DCA 1999); *see also*

Fla. R. Civ. P. 1.110(b). "A pleading is insufficient if it contains merely conclusions as opposed

to ultimate facts supporting each element of the cause of action." *Price v. Morgan*, 436 So.2d

1116, 1118 (Fla. 5th DCA 1983). Florida is a fact pleading jurisdiction and this requires a

Plaintiff to plead ultimate facts rather than legal conclusions or vague opinions. S*ee, Continental*

*Baking Company v. Vincent*, 634 So. 2d 242 (Fla. 5th DCA 1994)

## IV.    LEGAL ARGUMENT

### A.    Plaintiff Lacks Standing to Bring Claims Against NDM

Although less stringent than Article III standing, "Florida law also imports an injury in

fact requirement under [its] standing framework." *Pet Supermarket, Inc. v. Eldridge*, 360 So.3d

1201, 1205 (Fla. 3rd DCA 2023) (plaintiff lacked standing to pursue TCPA class action). The

Florida Supreme Court has articulated three requirements for standing: (1) the existence of an

"injury in fact," which is concrete, distinct and palpable, and actual or imminent, (2) a causal

connection between the injury and conduct complained of, and (3) a substantial likelihood that

the requested relief will remedy the alleged injury. *Pet Supermarket*, 360 So.3d at 1205 (quoting

*State v. J.P.*, 907 So.2d 1101, 1113 n.4 (Fla. 2004)). Florida courts are guided by federal case

law in assessing whether a plaintiff has alleged standing sufficiently to be entitled to an

adjudication of his claim. *Id.*

> Furthermore, within the context of a class action claim, "the class representative
> must illustrate that a case or controversy exists between him or her and the
> defendant, and that this case or controversy will continue throughout the existence
> of the litigation." A case or controversy "exists 'if a party alleges an actual or legal
> injury.'" "If it is shown that the plaintiff who seeks class certification suffered no
> injury and, thus, has no cause of action against the defendant, the class should not
> be certified."

*Pet Supermarket*, 360 So.3d at 1205-06 (internal citations omitted).

1. <u>Plaintiff Has Not Alleged Certainly Impending or Substantial Risk of Hypothetical Harm</u>

The federal courts of the Eleventh Circuit have examined in depth the question of standing in a data breach context.[2] Conclusory allegations that plaintiff will experience an increased risk of identity theft are not sufficient to confer standing. *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021). Such "hypothetical harm" must be "certainly impending" or there must be a "substantial risk" of such harm. *Tsao*, 986 F.3d at 1339.

In order for a plaintiff to plead that the threat of future identity theft is "'certainly impending' or a 'substantial risk'" it is necessary to allege "'actual misuse or actual access to personal data.'" *In re Mednax Servs., Inc., Customer Data Security Breach Litig.*, 603 F.Supp.3d 1183, 1201 (S.D. Fla. 2022). *See also Tsao*, 986 F.3d at 1344 (conclusory allegations of unauthorized charges were not enough to confer standing); *Green-Cooper v. Brinker Intl., Inc.*, 73 F.4th 883 (11th Cir. 2023) (some misuse required to establish standing).

Here, Plaintiff does not allege any facts of misuse of class members' personal information. While he does allege exfiltration (actual access), this allegation is contradicted by what plainly is the source of Plaintiffs' knowledge -- the Notice provided by NDM, which states, in relevant part, that personal information was <u>potentially</u> removed and that NDM has "not identified any fraudulent use of [] personal information as a result of this incident."[3] Exhibit 1.

---

[2] There do not appear to be cases decided by the courts of this State on this precise issue. Eleventh Circuit decisions may be looked to for guidance because, as noted, Florida courts borrow from federal jurisprudence when evaluating a plaintiff's standing.

[3] When allegations of a complaint are contradicted by an exhibit, the exhibit controls. *Zisis v. Signal Safe, Inc.*, --- So. 3d ---, 2024 WL 172707, at *3 (Fla. 3rd DCA Jan. 17, 2024) (quoting *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So.2d 490, 494 (Fla. 3rd DCA 1994)). As such, the Notice should control when analyzing whether Plaintiff has standing.

Since no actual misuse is alleged and the Notice denies actual access occurred, Plaintiff is unable to plead – and has not pleaded – facts to support a claim that he, or other class members, suffered the requisite "injury in fact" to establish standing. For this reason alone, this putative class action should be dismissed.

      2.      <u>Plaintiff Cannot Manufacture Standing By Inflicting Harm on Himself</u>

Plaintiff alleges that he and other class members will incur mitigation costs, including "costs associated with the detection and prevention of identity theft; [and] costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach Incident." Compl., ¶ 12.

Plaintiff cannot plead around the requirement of an impending injury, and yet that is what he tries to do by conjuring self-inflicted injuries. "It is well established that plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Tsao*, 986 F.3d at 1344 (quoting *Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 416 (2013)); *see also Tsao*, 986 F.3d at 1339. *See also Torres v. Wendy's Company*, 195 F.Supp.3d 1278 (M.D. Fla. 2016) (out-of-pocket expenses to mitigate data breach did not establish standing); *In re Mednax Servs., Inc.*, 603 F.Supp.3d at 1201 ("any steps plaintiffs take to monitor their credit or financial statements for fraudulent activity establish an injury in fact only if plaintiffs have shown that they face a substantial or certainly impending threat of future harm"). "The threat of future identity theft has been considered 'certainly impending' or a 'substantial risk' in cases where plaintiffs have alleged 'actual misuse or actual access to personal data.'" *In re Mednax Servs.*, 603 F.Supp.3d at 1201.

By way of example, in *Tsao*, the plaintiff offered vague, conclusory allegations that members of the class had suffered actual misuse of their personal data ("unauthorized charges").

The Eleventh Circuit concluded that plaintiff's mitigation costs, *e.g.*, costs associated with detection and prevention of identity theft, time and effort to cancel and replace credit cards, were not sufficient to create standing, because there was not a substantial risk of harm. 986 F.3d at 1344-45. The plaintiff could not "conjure standing [] by inflicting injuries on himself to avoid an insubstantial, non-imminent risk of identity theft." *Tsao*, 986 F.3d at 1345.

Here, Plaintiff does not allege any actual misuse and offers only conclusory allegations of actual access, which are contradicted by the Notice. Absent actual misuse or actual access, there is no substantial, imminent risk of identity theft. *See Tsao*, 986 F.3d at 1344-45; *In re Mednax Servs., Inc.*, 603 F.Supp.3d at 1201. Like in *Tsao*, Plaintiff cannot establish standing by voluntarily incurring mitigation costs to address an insubstantial, non-imminent risk of identity theft. The Complaint should be dismissed for lack of standing.

3.     An Alleged Invasion of Privacy, Without More, Does Not Confer Standing

Plaintiff also attempts to create standing by alleging that he and other class members have suffered an invasion of privacy. Compl., ¶ 12. Again, this is insufficient. Courts consistently hold that allegations of loss of privacy from a data incident *without more* are not enough to establish injury-in-fact. *In re Mednax Servs.*, 603 F.Supp.3d at 1204 (emphasis in original). Something "more" can be established by alleging actual access to and misuse of personal information. *See In re Mednax Servs.*, 603 F.Supp.3 at 1203 (invasion of privacy allegations were sufficient to confer standing where plaintiff alleged actual access and misuse of personal information, including increase spam, the opening of fraudulent bank accounts, and identity theft). As previously discussed, Plaintiff has failed to allege the requisite access and misuse. Thus, Plaintiff's invasion of privacy allegations are insufficient to confer standing.

4.    Without Evidence of Misuse, Allegations of Emotional Distress Are
      Insufficient to Confer Standing

Plaintiff also alleges that he and other class members have suffered "emotional distress, stress, nuisance, and annoyance." Compl., ¶ 12. The Third Circuit has conducted an in-depth analysis as to whether emotional distress, without evidence of misuse, is sufficient to confer standing in a data breach class action. *See Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011). The Third Circuit concluded that, "[i]n data breach cases where no misuse is alleged [] there has been no injury... Moreover, there is no quantifiable risk of damage in the future... Any damages that may occur here are entirely speculative and dependent on the skill and intent of the hacker." *Reilly*, 664 F.3d at 45. As stated before, Plaintiff does not allege any actual misuse of personal information resulting from the breach incident. Accordingly, his allegations of emotional distress fail to create standing.

5.    Alleged Diminution in Value is Not Sufficient to Confer Standing

Plaintiff alleges "damages to and diminution in value of their personal data." Compl., ¶ 12. Such a loss of value is not a cognizable harm. *See In re 21st Century Oncology Customer Data Security Breach Litig.*, 380 F.Supp.3d 1243, 1257 (M.D. Fla. 2019); *see also Torres v. Wendy's Company*, 195 F.Supp.3d 1278, 1284 (M.D. Fla. 2016) (alleged loss of value did not confer standing where plaintiff did not explain how personal information became less valuable on national and international data markets following breach incident). As such, Plaintiff cannot rely upon this allegation to create standing.

6.    Speculative Risk of Future Breaches is Not an Injury-in-Fact

Plaintiff alleges he and the other class members are at risk of further breaches so long as NDM has class members' personal information. Compl., ¶ 12. This is a logical fallacy. There is no reason to believe NDM is more likely to experience another breach incident. Even if a past

data breach created an inference that a future data breach is more likely, such an inference is insufficient to create standing. *See Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023) (finding lack of standing).

Further, as discussed above, a "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper,* 568 U.S. at 409 (emphasis in original). "'Allegations of *possible* future injury' are not sufficient." *Id*. (emphasis in original). Plaintiff has not stated any facts which would suggest that NDM is on the precipice of another data breach. Plaintiff's allegations are entirely speculative. The risk of a second data breach is not an injury-in-fact that confers standing upon the Plaintiff.

> **B.    Plaintiff Has Not Adequately Plead Proximate Cause as Required to State Causes of Action for Negligence and Breach of Fiduciary Duty**

Assuming *arguendo* that Plaintiff had standing to bring any claims against NDM, his claims should still be dismissed for failure to state a cause of action. "A negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Bartsch v. Costello*, 170 So.3d 83, 86 (Fla. 4th DCA 2015). Similarly, "[t]he elements of a cause of action for breach of fiduciary duty in Florida include "damages *flowing from* the breach." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (emphasis in original).

"Generally, to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence." *Resnick*, 693 F.3d at 1326. To establish such a nexus, the plaintiff must plead more than conclusory statements. Plaintiff must allege facts establishing a logical connection between the incident and a harm. *Id.* at 1327. We previously have discussed the failure to plead any facts

establishing any harm; even, however, were the Court to conclude that Plaintiff has pleaded harm

sufficient for standing purposes, Plaintiff has failed to plead causation of any such loss or

damage.

Plaintiff's pleading falls well short of the pleading in *Resnick v. AvMed* where the

Eleventh Circuit found the requisite nexus. There, the plaintiffs alleged that "prior to the data

breach," the plaintiffs had never:

> had their identities stolen or their sensitive information "compromised in any way."
> [The complaint] further alleges that "[plaintiff] took substantial precautions to
> protect herself from identity theft," including not transmitting sensitive information
> over the Internet or any unsecured source; not storing her sensitive information on
> a computer or media device; storing sensitive information in a "safe and secure
> physical location;" and destroying "documents she receives in the mail that may
> contain any of her sensitive information, or that contain any information that could
> otherwise be used to steal her identity, such as credit card offers."

693 F.3d at 1326.

> There are no such allegations here. Instead, Plaintiff alleges, in conclusory fashion,[4]

> 76.    But for Defendant's wrongful and negligent breach of duties owed to
> Plaintiff and the Class members, the PII of Plaintiff and the Class members would
> not have been compromised.

> 77.    There is a close casual connection between Defendant's failure to
> implement security measures to protect the PII of Plaintiff and the Class members
> and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class
> members. Plaintiff's and the Class members' PII was accessed and exfiltrated as
> the proximate result of Defendant's failure to exercise reasonable care in
> safeguarding such PII by adopting, implementing, and maintaining appropriate
> security measures.

Compl., ¶¶ 76-77. Plaintiff assumes that, because a breach incident occurred, harm will

necessarily result. Unlike in *Resnick*, there are no factual allegations supporting this conclusion.

Without factual allegations akin to those in *Resnick*, it cannot be assumed that this particular

---

[4] Unlike factual allegations, courts need not accept legal conclusions as true. *Resnick*, 693 F.3d at
1326.

incident created an increased risk of harm to Plaintiff or caused actual harm. Plaintiff has failed to adequately plead proximate cause and, by extension, Plaintiff has failed to state a cause of action for either negligence or breach of fiduciary duty.

      **C.**     <u>**Plaintiff Has Not Plead Actual Damages as Required to State a Cause of Action for Negligence**</u>

"A cause of action in negligence requires proof of actual loss or damage." *Lucarelli Pizza & Deli v. Posen Const., Inc.*, 173 So.3d 1092, 1094 (Fla. 2nd DCA 2015). "Actual or compensatory damages are those amounts necessary to compensate adequately an injured party for losses sustained as the result of a defendant's wrongful or negligent acts." *Bidon v. Dept. of Prof'l Regulation, Fla. Real Estate Comm'n*, 596 So.2d 450, 450 (Fla. 1999). Here, as discussed at length in the standing section, Plaintiff has not suffered an injury-in-fact. There is no wrong to compensate. As such, Plaintiff has failed to adequately plead the fourth element of a negligence cause of action. Plaintiff's negligence claim should be dismissed.

      **D.**     <u>**Plaintiff Has Failed to State a Cause of Action for Negligence *Per Se***</u>

Plaintiff pleads both negligence and negligence *per se* in his first cause of action. A claim for negligence *per se* is based upon "a violation of any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." *deJesus v. Seaboard Coast Line R. Co.*, 281 So.2d 198, 201 (Fla. 1973). "Florida courts have refused to recognize a private right of action for negligence *per se* based on an alleged violation of a federal statute that does not provide for a private right of action." *Weinberg v. Advanced Data Processing, Inc.*, 147 F.Supp.3d 1359, 1365 (S.D. Fla. 2015); *see also In re Mednax Servs., Inc. Customer Data Security Breach Litigation*, 603 F.Supp.3d 1183, 1225 (S.D. Fla. 2022).

Plaintiff's negligence *per se* claim is based on alleged violations of Section 5 of the Federal Trade Commission Act. Compl., ¶¶ 78-82. "'There is no private cause of action implied under the Federal Trade Commission Act.' Thus, violations of Section 5 cannot form the basis for a negligence *per se* claim." *In re Mednax Servs.*, 603 F.Supp.3d at 1225. Accordingly, Plaintiff's first cause of action should be dismissed insofar as it attempts to state a claim for negligence *per se*.

    **E.**    <u>Plaintiff Has Failed to State a Cause of Action for Breach of Fiduciary Duty, Because NDM Does Not Owe Plaintiff a Fiduciary Duty as a Matter of Law</u>

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). The existence of a duty is a question of law. *Gracey*, 837 So.2d at 354 n.7; *Building Educ. Corp. v. Ocean Bank*, 982 So.2d 37, 41 (Fla. 3rd DCA 2008); *Garofalo v. Poskauer Rose LLP*, 253 So.3d 2, 7 (Fla. 4th DCA 2018).

NDM is a wholesale mortgage lender and mortgage servicer. *See* Compl., ¶ 2. Courts have consistently held that neither mortgage lenders nor mortgage servicers owe a fiduciary duty to borrowers. *Wilson v. EverBank, N.A.*, 77 F.Supp.3d 1202, 1223 (S.D. Fla. 2015) (lender); *see also Whelden v. U.S. Bank N.A.*, 494 F.Supp.3d 68, 73 (D.Mass. 2020) (lender and servicer); *Rellstab v. Ditech Financial LLC*, 396 F.Supp.3d 215, 218 (lender and servicer); *Ponder v. Ocwen Loan Servicing, LLC*, 362 F.Supp.3d 1275, 1282-83 (N.D. Ga. 2018); *Montgomery v. CitiMortgage, Inc.*, 955 F.Supp.2d 640 (S.D. Miss. 2013) (servicer); *Dyer v. Capital One, N.A.*, 496 F.Supp.3d 554, 561 (D. Mass. 2020); *see also Mac-Gray Services, Inc. v. Degeorge*, 913 So.2d 630 (Fla. 2005) (ordinary commercial transaction does not create fiduciary duties; a fiduciary relationship is based on trust and confidence between the parties where confidence is reposed by one party and a trust accepted by the other, when the parties are dealing at arm's

length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other) (citations omitted).. For this reason alone, Plaintiff has failed to state a cause of action for breach of fiduciary duty. His second cause of action must be dismissed.

## V.    __CONCLUSION__

Plaintiff has not alleged an injury-in-fact. As such, he does not have standing to bring claims on his own behalf or on behalf of a class. Even if he could establish standing, he has failed to adequately allege proximate cause as is required for both negligence and breach of fiduciary duty. Plaintiff has also failed to state a claim for negligence *per se*, because the statute upon which he relies does not confer a private right of action. In addition, Plaintiff has failed to state a claim for breach of fiduciary duty because, as a matter of law, NDM does not owe a fiduciary duty to Plaintiff or other class members. For these reasons, NDM respectfully requests that this Court grant its motion to dismiss Plaintiff's class action complaint.

DATED: March 28, 2024                Respectfully submitted,

                                              BUCHALTER, A Professional Corporation

                                              By: */s/ Christina M. Morgan*
                                                     Christina M. Morgan
                                                     California State Bar No. 277877
                                                     (*pro hac vice pending*)
                                                     655 W. Broadway, Suite 1600
                                                     San Diego, CA 92101
                                                     cmorgan@buchalter.com
                                                     Telephone: (619) 219-6329


                                              By: */s/ Michael P. De Simone*
                                                     Michael P. De Simone
                                                     Florida State Bar No. 119739
                                                     P.O. Box 3571
                                                     West Palm Beach, Florida 33402
                                                     Michael@DeSimone.Law
                                                     (914) 419-7908

# EXHIBIT 1

February 28, 2024

<<first_name>> <<middle_name>> <<last_name>> <<suffix>>
<<address_1>>
<<address_2>>
<<city>>, <<state_province>> <<postal_code>>
<<country>>

Re:  **NOTICE OF POTENTIAL DATA BREACH**

Dear <<first_name>> <<middle_name>> <<last_name>> <<suffix>>,

We are writing to notify you of a recent event that may have impacted your personal information as a current or former customer or employee of Nations Direct Mortgage, LLC ("<u>Nations Direct</u>"). As of the date of this notice of data breach, Nations Direct has no indication of any fraudulent use of your personal information as a result of this incident. Nations Direct is providing this notice to you to explain how the company was the victim of a crime by bad actors and the resources we are making available to you in connection therewith.

**What Happened?**

On or about December 30, 2023, Nations Direct became aware of unauthorized access to certain systems within its computer information technology network. Upon becoming aware of the incident, Nations Direct immediately commenced an investigation with the assistance of third-party experts, notified certain law enforcement and governmental authorities, and began taking measures to assess and contain the incident. The incident has been contained.

The investigation has determined that an unauthorized third party obtained access to and potentially removed data of certain individuals from across the country. As part of the review of the potentially impacted data, we and the third party experts retained by us have identified that some of your personal information may have been among that data. It is important to note that we have not identified any fraudulent use of your personal information as a result of this incident.

**What Information Was Involved?**

Based on our investigation, we understand that your name, address, social security number, and unique Nations Direct loan number may have been obtained by the unauthorized third party bad actor.

**What We Are Doing**

Upon learning of the incident, we promptly launched an investigation into the nature and scope of the incident and notified law enforcement. We also took immediate measures to further secure our information systems from further breach.

To help address concerns you may have about this incident, we have secured the services of Kroll to provide identity monitoring services at no cost to you for twenty-four (24) months. Your identity monitoring services include Credit Monitoring, Web Watcher, $1 Million Identity Fraud Loss Reimbursement, Fraud Consultation, and identity Theft Restoration. Additional information describing these services is included below. To activate these services, please take the following steps:

Visit **https://enroll.krollmonitoring.com** to activate and take advantage of your identity monitoring services.

*You have until <<b2b_text_6(activation deadline)>> to activate your identity monitoring services.*

Membership Number: <<Membership Number s_n>>

For more information about Kroll and your Identity Monitoring services, you can visit info.krollmonitoring.com.

Additional information describing your services is included with this letter.

**What You Can do**

Although we have no knowledge of any fraudulent use of your personal information due to this incident, it is important to remain vigilant and to review and monitor your accounts, account statements, and free credit reports for any suspicious activity, fraud, or identity theft. Additional steps you can take to safeguard your personal information is included herein on the attached disclosure.

**For More Information**

Nations Direct appreciates the concerns you may have regarding this incident and is prepared to respond to any questions or concerns you may have about the incident and the services being offered for your benefit at no additional cost to you. You may call TFN, Monday through Friday from 6:00 am to 3:30 pm Pacific Time, excluding major US holidays.

Very truly yours,

Nations Direct Mortgage, LLC

You have the right to obtain any police report filed in regard to this incident. If you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it.

You may also place a security freeze on your credit reports, free of charge. A security freeze prohibits a credit reporting agency from releasing any information from a consumer's credit report without written authorization. However, please be aware that placing a security freeze on your credit report may delay, interfere with, or prevent the timely approval of any requests you make for new loans, credit mortgages, employment, housing or other services. Under federal law, you cannot be charged to place, lift, or remove a security freeze.

You must place your request for a freeze with each of the three major consumer reporting agencies: Equifax (www.equifax.com); Experian (www.experian.com); and TransUnion (www.transunion.com). To place a security freeze on your credit report, you may send a written request by regular, certified or overnight mail at the addresses below. You may also place a security freeze through each of the consumer reporting agencies' websites or over the phone, using the contact information below:

Equifax Security Freeze
P.O. Box 105788
Atlanta, GA 30348
1-800-349-9960
https://www.equifax.com/personal/credit-report-services/
Experian Security Freeze

P.O. Box 9554
Allen, TX 75013
1-888-397-3742
https://www.experian.com/freeze/center.html

TransUnion Security Freeze
P.O. Box 160
Woodlyn, PA 19094
1-888-909-8872
https://www.transunion.com/credit-freeze

In order to request a security freeze, you will need to provide some or all of the following information to the credit reporting agency, depending on whether you do so online, by phone, or by mail:

1. Your full name (including middle initial as well as Jr., Sr., II, III, etc.);
2. Social Security Number;
3. Date of birth;
4. If you have moved in the past five (5) years, the addresses where you have lived over the prior five years;
5. Proof of current address, such as a current utility bill, telephone bill, rental agreement, or deed;
6. A legible photocopy of a government issued identification card (state driver's license or ID card, military identification, etc.);
7. Social Security Card, pay stub, or W2;
8. If you are a victim of identity theft, include a copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft.

The credit reporting agencies have one (1) to three (3) business days after receiving your request to place a security freeze on your credit report, based upon the method of your request. The credit bureaus must also send written confirmation to you within five (5) business days and provide you with a unique personal identification number (PIN) or password (or both) that can be used by you to authorize the removal or lifting of the security freeze. It is important to maintain this PIN/ password in a secure place, as you will need it to lift or remove the security freeze.

To lift the security freeze in order to allow a specific entity or individual access to your credit report, you must make a request to each of the credit reporting agencies by mail, through their website, or by phone (using the contact information above). You must provide proper identification (including name, address, and social security number) and the PIN number or password provided to you when you placed the security freeze, as well as the identities of those entities or individuals you would like to receive your credit report. You may also temporarily lift a security freeze for a specified period of time rather than for a specific entity or individual, using the same contact information above. The credit bureaus have between one (1) hour (for requests made online) and three (3) business days (for request made by mail) after receiving your request to lift the security freeze for those identified entities or for the specified period of time.

To remove the security freeze, you must make a request to each of the credit reporting agencies by mail, through their website, or by phone (using the contact information above). You must provide proper identification (name, address, and social security number) and the PIN number or password provided to you when you placed the security freeze. The credit bureaus have between one (1) hour (for requests made online) and three (3) business days (for requests made by mail) after receiving your request to remove the security freeze.

You may also contact the Federal Trade Commission to get more information about how to avoid identity theft.

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2222
www.ftc.gov/

**Maryland Residents:** You may contact your state attorney general to obtain additional information.

Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
(410) 528-8662
www.marylandattorneygeneral.gov

**Oregon Residents:** You may contact your state attorney general to obtain additional information.

Office of the Attorney General
1162 Court Street NE
Salem, OR 97301-4096
(877) 877-9392
www.doj.state.or.us

**North Carolina Residents:** You may contact your state attorney general to obtain additional information.

North Carolina Department of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001
(919) 716-6000
ncdoj.gov

**Rhode Island Residents:** You may contact your state attorney general to obtain additional information.

Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
riag.ri.gov



## TAKE ADVANTAGE OF YOUR IDENTITY MONITORING SERVICES

You have been provided with access to the following services from Kroll:

**Single Bureau Credit Monitoring**

You will receive alerts when there are changes to your credit data—for instance, when a new line of credit is applied for in your name. If you do not recognize the activity, you'll have the option to call a Kroll fraud specialist, who will be able to help you determine if it is an indicator of identity theft.

**Web Watcher**

Web Watcher monitors internet sites where criminals may buy, sell, and trade personal identity information. An alert will be generated if evidence of your personal identity information is found.

**Public Persona**

Public Persona monitors and notifies when names, aliases, and addresses become associated with your Social Security number. If information is found, you will receive an alert.

**Quick Cash Scan**

Quick Cash Scan monitors short-term and cash-advance loan sources. You will receive an alert when a loan is reported, and you can call a Kroll fraud specialist for more information.

**$1 Million Identity Fraud Loss Reimbursement**

Reimburses you for out-of-pocket expenses totaling up to $1 million in covered legal costs and expenses for any one stolen identity event. All coverage is subject to the conditions and exclusions in the policy.

**Fraud Consultation**

You have unlimited access to consultation with a Kroll fraud specialist. Support includes showing you the most effective ways to protect your identity, explaining your rights and protections under the law, assistance with fraud alerts, and interpreting how personal information is accessed and used, including investigating suspicious activity that could be tied to an identity theft event.

**Identity Theft Restoration**

If you become a victim of identity theft, an experienced Kroll licensed investigator will work on your behalf to resolve related issues. You will have access to a dedicated investigator who understands your issues and can do most of the work for you. Your investigator will be able to dig deep to uncover the scope of the identity theft, and then work to resolve it.

Kroll's activation website is only compatible with the current version or one version earlier of Chrome, Firefox, Safari and Edge.

To receive credit services, you must be over the age of 18 and have established credit in the U.S., have a Social Security number in your name, and have a U.S. residential address associated with your credit file.